**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

CHARLOTTE AMENYAH,
ANNE DULIEPE,
BERNADETTE LUNDY,
SABA MAHARI,
ANA MAZORIEGO,
GHIDEY MENGHISTEAB,
FIKADU MENGISTU,
AMPARO ORELLANA,
YAMILETH ORELLANA,
SUYAPA RAMÍREZ,
SILVIA PEÑA ROSALES,
MARCO RODRÍGUEZ and
FILEMON TUNGCOD,

Plaintiffs,

v.

RANDOLPH HILLS NURSING CARE, INC.,
RANDOLPH HILLS ADULT DAY CARE CENTER, INC.,
APEX HEALTH MANAGEMENT LLC,
RANDOLPH ROAD LLC,
NMS HEALTHCARE OF SILVER SPRING LLC,
NEISWANGER MANAGEMENT SERVICES LLC and
NEW MANAGEMENT SERVICES LLC,

Defendants.

Civil Action No. TDC-15-3062

**MEMORANDUM OPINION**

On October 8, 2015, Plaintiffs Charlotte Amenyah, Anne Duliepe, Bernadette Lundy, Saba Mahari, Ana Mazoriego, Ghidey Menghisteab, Fikadu Mengistu, Amparo Orellana, Yamileth Orellana, Suyapa Ramírez, Silvia Peña Rosales, Marco Rodríguez, and Filemon Tungcod (collectively, "Plaintiffs") filed a Complaint against Defendants Randolph Hills

Nursing Care, Inc. ("Randolph Hills Nursing Care"), Randolph Hills Adult Day Care Center, Inc. ("Randolph Hills Adult Day Care"), Apex Health Management LLC ("Apex"), Randolph Road LLC ("Randolph Road"), NMS Healthcare of Silver Spring LLC ("NMS Silver Spring"), Neiswanger Management Services LLC ("Neiswanger Management"), and New Management Services LLC (collectively, "Defendants"). Plaintiffs allege that Defendants discriminated against them on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (2012), and the Montgomery County Human Rights Act, Montgomery County Code § 27-19 (2015); made negligent misrepresentations; and failed to pay wages in violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501–09 (West 2016). Presently pending before the Court is a Motion to Dismiss, filed by Randolph Hills Nursing Care, Randolph Hills Adult Day Care, and Apex (collectively, "the Randolph Hills Defendants") on October 23, 2015. The motion is ready for disposition, and a hearing is unnecessary. *See* D. Md. Local R. 105.6. For the following reasons, the Motion to Dismiss is DENIED.

## BACKGROUND

Plaintiffs worked at NMS Healthcare of Silver Spring ("the Center"), formerly known as Randolph Hills Nursing Center, a skilled nursing and rehabilitation center. The Center was owned and operated by Randolph Hills Nursing Care and Randolph Hills Adult Day Care (collectively, "Randolph Hills"), and Apex managed personnel matters and provided executive management assistance. Plaintiffs allege that the Randolph Hills Defendants were an "integrated enterprise" owned and controlled by Jung Hee Lee, that they shared management staff and had a common purpose of operating the Center, and that they shared responsibility for managing the Center's employees. Compl. ¶ 104. All but one of Plaintiffs worked at the Center as either a

laundry aide, housekeeping aide, dietary aide, or kitchen aide. Rodríguez was a director of environmental services, a position that entailed supervising dietary aides, housekeeping aides, laundry aides, and maintenance assistants. By the time that Plaintiffs were terminated, each of them had worked for different periods of time, ranging from Amenyah, who worked at the Center for more than 30 years, to Peña Rosales, who had worked at the Center for approximately six months. Plaintiffs were all full-time employees who liked their jobs and worked together as a team.

Plaintiffs' circumstances began to change in early November 2013, when Matthew Neiswanger, the Chief Executive Officer of Neiswanger Management who introduced himself as a representative of NMS Silver Spring, met with Plaintiffs to announce that he would become the new owner of the Center. At the meeting, Neiswanger promised that when NMS Silver Spring took control of the Center in December 1, 2013, Plaintiffs would keep their jobs, earn the same hourly rates, and receive the same vacation and sick leave benefits, and that any accrued leave would carry over. More broadly, Plaintiffs allege that Defendants made false statements that Plaintiffs would be retained once NMS Silver Spring, Neiswanger Management, and New Management began operating the Center, that Plaintiffs would retain the same leave benefits that they received under Randolph Hills and Apex, and that their accrued leave would carry over. Throughout November 2013, NMS Silver Spring and Neiswanger Management representatives worked out of the same office as the Randolph Hills Defendants and gave orders to Plaintiffs. During this period, the Randolph Hills Defendants made recommendations on whether NMS Silver Spring should retain or terminate Center employees once it bought the Center.

At two other meetings, NMS Silver Spring managers had Plaintiffs fill out personnel paperwork, had their pictures taken for new NMS Silver Spring identification cards, instructed

them to purchase clothing as part of their new uniforms, and promised that they would retain their jobs for at least 90 days after the change in ownership. One NMS Silver Spring manager told Amparo Orellana that she could not use any of her accrued vacation time before December 2013, or she would lose her job. Orellana postponed her vacation plans, believing that she would keep her job once NMS Silver Spring purchased the Center. Indeed, several Plaintiffs claim that they would have used their vacation leave in November 2013 but for the promises made by NMS Silver Spring that they would keep their jobs and that their sick and vacation leave would carry over. In addition, Plaintiffs refrained from seeking alternative employment during November 2013 based on Defendants' statements that they would retain their jobs.

On November 28, 2013, pursuant to an agreement with Randolph Hills, Randolph Road became the owner of the Center and the employer of Plaintiffs. Three days later, on December 1, 2013, Randolph Road leased the Center to NMS Silver Spring, which then identified itself as Plaintiffs' employer as of that date. On December 2, 2013, Amenyah, Lundy, Mazoriego, Amparo Orellana, Yamileth Orellana, Peña Rosales, Ramírez, and Rodríguez reported for their morning shifts. Shortly after 8:00 a.m., Mark Yost, the general counsel and vice president of legal and regulatory affairs for Neiswanger Management, and Melissa Kammer, vice president of human resources for Neiswanger Management, informed them that they were no longer employed at the Center and that the police would be called if they did not leave the premises immediately. Menghisteab, Mengistu, and Mahari all began their shifts before they were also informed of their termination. Also on December 2, 2013, Kammer called Duliepe to tell her not report to work because she no longer had a job at the Center.

On December 2, Tungcod was on previously scheduled paid vacation leave. When he returned a few days later, he was informed that he had been terminated. Tungcod asserts that he was not paid for the three weeks of vacation leave he took with the permission of his supervisor.

Plaintiffs allege that the Randolph Hills Defendants told them that regardless of any written policy, they would compensate Plaintiffs for accrued sick leave and vacation leave upon termination. Plaintiffs further allege that although Apex's employee handbook contained a provision stating that accrued vacation and sick leave would not be paid upon termination, the Randolph Hills Defendants had never adequately notified them of this provision. They claim that several Plaintiffs never received the handbook, and other Plaintiffs never had the contents explained to them in a language in which they were sufficiently conversant.

When they were fired, all but one of the Plaintiffs was over 40 years old. As they were leaving after being fired, several Plaintiffs observed replacement housekeeping workers who appeared to be under 40 years old arriving at the Center to take their jobs. NMS Silver Spring personnel records reveal that as of December 2, 2013, 17 of the 22 employees in the housekeeping, kitchen, and laundry departments were either over 40 years old or, in one case, would turn 40 within a month. Of these employees, 16 were terminated before January 31, 2014, including the 13 Plaintiffs. NMS Silver Spring retained five employees from these departments who were under 40. During the same time period, the NMS Defendants hired 19 new employees in the same departments, 18 of whom were under 40.

**DISCUSSION**

The Randolph Hills Defendants offer three grounds to dismiss Plaintiffs' claims against them: (1) they were not Plaintiffs' employer at the time of their termination, so they could not be liable under the ADEA or the Montgomery County Human Rights Act; (2) Plaintiffs' negligent

misrepresentation claim is conclusory and fails to allege an actionable duty of care or false statement; and (3) Plaintiffs' MWPCL cause of action fails to state a claim because the Randolph Hills Defendants were not Plaintiffs' employer at the time of their termination, the employee handbook does not provide for accrued sick and vacation leave upon termination, and Tungcod has not alleged that wages were owed to him. The Court addresses each of these arguments in turn.

## I. Legal Standard

In order to defeat a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing whether this standard has been met, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678.

## II. ADEA and the Montgomery County Human Rights Act

Plaintiffs have brought claims against Defendants under §§ 623(a) and 626(c) of the ADEA and section 27-19 of the Montgomery County Human Rights Act. Section 623(a) states that it is unlawful for an employer (1) "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age"; or (2) "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a). Section 27-19 similarly states that an employer must not, because of age, "discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment; or . . . limit, segregate, or classify employees in any way that would deprive or tend to affect adversely any individual's employment opportunities or status as an employee." Montgomery County Code § 27-19(a)(1).

The Randolph Hills Defendants first assert that Plaintiffs have not stated a claim under the ADEA and the Montgomery County Human Rights Act because they were not Plaintiffs' employer at the time of termination. Liability under the ADEA, however, is not as limited as the Randolph Hills Defendants suggest. Employment discrimination laws can protect both current *and* former employee from discriminatory adverse employment actions. *Cf. Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (interpreting Title VII of the Civil Rights Act of 1964); *Gerner v. County of Chesterfield*, 674 F.3d 264 (4th Cir. 2012) (same). Moreover, "[m]ultiple entities may simultaneously be considered employers" for purposes of employment discrimination claims if they "share or co-determine . . . matters governing the essential terms and conditions of employment" or both "exercise significant control over the same employees." *Butler v. Drive Automotive Indus. of America*, 793 F.3d 404, 410 (4th Cir. 2015) (internal citations and quotation marks omitted).

When a termination decision is made at the time of a change in employers as a result of a merger, acquisition, or sale of a company, liability under these statutes can extend to both the predecessor and successor employers under a "joint employer" theory. *See Woodman v. WWOR-*

*TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005). In *Woodman*, the court concluded that a joint-employer relationship could exist where, with an upcoming merger about to result in Fox Television Stations, Inc. acquiring WWOR-TV, Fox received information from WWOR that led it to direct WWOR to fire the plaintiff, a longtime WWOR employee, before the transaction took effect. 411 F.3d at 72–73.

Here, Plaintiffs allege that all Defendants "acted as joint employers, integrated enterprises, and/or as agents of one another." Compl. ¶ 6. They further allege that the Randolph Hills Defendants "made recommendations as to whether NMS Silver Spring should retain or terminate Center employees once it assumed full responsibility for operating the Center," Compl. ¶ 65, and that all of the Defendants took their actions "because of Plaintiffs' age," Compl. ¶ 11. The scenario is akin to that in *Woods v. Boeing Company*, 355 F. App'x 206 (10th Cir. 2009), where after Boeing sold an aircraft plant to Spirit Aerosystems, Inc., Spirit terminated the plaintiff, a former Boeing employee at the plant, based on recommendations made by Boeing managers. *Id.* at 207–08, 211 (without addressing the joint employer issue, reversing a grant of summary judgment in favor of both Boeing and Spirit on an age discrimination claim). Thus, although the Randolph Hills Defendants may not have been Plaintiffs' technical employer at the time they were terminated, the allegation that they specifically contributed to Plaintiffs' termination as a joint employer is sufficient to state a claim under the ADEA and the Montgomery County Human Rights Act.

The Randolph Hills Defendants claim that there is no "predecessor liability" under the ADEA, citing an unpublished decision from the Southern District of Indiana. *See Ratliff v. Conagra, Inc.*, No. IP 01-0129-C H/K, 2001 WL 1397298, at *4 (S.D. Ind. Oct. 31, 2001). There, however, after the plaintiff's employer, Nabisco, was acquired by Beatrice, the plaintiff

alleged wrongful retaliation by Beatrice personnel who used to work for Nabisco that took place over a year after the acquisition. *Id.* at *3. There was no involvement by any current Nabisco employees in the retaliatory activities. *Id.* By contrast, Plaintiffs have alleged that personnel of the Randolph Hills Defendants, while employed by those companies, specifically made recommendations on whom to retain or terminate within weeks or days of the actual termination. The Court concludes that the fact that Plaintiffs were then terminated only days after the transfer of ownership to NMS Management does not bar their age discrimination claim against the Randolph Hills Defendants.

**III. Negligent Misrepresentation**

The Randolph Hills Defendants also assert that Plaintiffs have failed to state a claim for negligent misrepresentation. Because the alleged statements were made in Maryland, the Court applies Maryland law to this claim. *Lab. Corp. of America v. Hood*, 911 A.2d 841, 845 (Md. 2006). In order to state a claim for negligent misrepresentation under Maryland law, a plaintiff must allege that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that the statement by acted upon by the plaintiff; (3) the defendant had knowledge that the plaintiff would probably rely on the statement which, if erroneous, would cause loss or injury; (4) the plaintiff justifiably took action in reliance on the statement; and (5) the plaintiff suffered damage caused by the negligent statement. *Griesi v. Atlantic Gen. Hosp. Corp.*, 756 A.2d 548, 553 (Md. 2000). The Randolph Hills Defendants claim that Plaintiffs' allegations fail because (1) the alleged misrepresentations were not made by the Randolph Hills Defendants; (2) the Randolph Hills Defendants did not owe Plaintiffs the requisite duty of care; and (3) the alleged misrepresentations were promissory or predictive in nature.

First, Plaintiffs have alleged that the Randolph Hills Defendants made negligent misrepresentations. Plaintiffs allege that "Defendants negligently made false statements that Plaintiffs would be retained once NMS Silver Spring, Neiswanger Management, and New Management began operating the Center, that Plaintiffs would retain the same leave benefits that they received under Randolph Hills and Apex, and that their accrued leave would carry over." Compl. ¶ 132. They also specifically allege that "Defendants Randolph Hills and Apex made negligent representations indicating that notwithstanding any written policy, they would compensate Plaintiffs for accrued sick leave and vacation leave upon termination." *Id.* ¶ 133.

Plaintiffs have also made sufficient allegations to support the inference that the Randolph Hills Defendants owed Plaintiffs a duty of care. "For claims of economic loss due to negligent misrepresentation, the injured party must prove that the defendant owed him or her a duty of care by demonstrating an intimate nexus between them." *Griesi*, 756 A.2d at 554. Maryland courts consider numerous factors to determine whether an intimate nexus exists:

> There must be knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.

*Id.* (quoting *Weisman v. Connors*, 540 A.2d 783, 792 (Md. 1988)).

Here, Plaintiffs have made sufficient allegations that they had an intimate nexus with the Randolph Hills Defendants that gave rise to a duty of care. The alleged statements related to Plaintiffs' future employment and benefits, which any employer would understand to be a serious matter for employees. Plaintiffs have alleged that the Randolph Hills Defendants knew that Plaintiffs would rely on their representations, and that the statements in fact caused injury because Plaintiffs "refrained from seeking alternative employment and refrained from using

accrued vacation leave before NMS Silver Spring, Neiswanger Management, and New Management began operating the Center on December 1, 2013." Compl. ¶ 136. Plaintiffs also allege that they spent money on clothing for the NMS Silver Spring uniform in reliance on Defendants' promise that they would keep their jobs.

Finally, Plaintiffs have alleged that the nature of their relationship with the Randolph Hills Defendants, a longstanding employment relationship, was such that they had the right to rely on them for information. *See Griesi*, 756 A.2d at 554. The Court of Appeals of Maryland has recognized that "the employer-employee relationship is a business transaction, where a special relationship may develop giving rise to a duty to exercise reasonable care in facilitating the transaction." *Id.* at 555 (citing *Weisman v. Connors*, 540 A.2d 783, 793 (Md. 1988)). Contrary to the Randolph Hills Defendants' claim, an at-will employment relationship can create the duty of care required for a negligent misrepresentation claim. *See Griesi*, 756 A.2d at 556-58.[1] For example, such a duty of care can arise in the context of pre-employment negotiations. *See id.* at 556; *Weisman v. Connors*, 540 A.2d 783, 793 (Md. 1988).

Here, the relationship is far stronger than that associated with pre-employment discussions. Several plaintiffs worked at the Center for over 10 years. Plaintiffs assert that they were dedicated, full-time employees who had strong employment records, worked together as a team, and took pride in helping the Center's residents. These allegations are certainly sufficient to support a claim that their employers owed them a duty of care to avoid misrepresentations in discussions that affected their income and future livelihood.

---

1 Although the Randolph Hills Defendants cite *McNierney v. McGraw-Hill, Inc.*, 919 F. Supp. 853 (D. Md. 1995), in support of their argument that no duty of care to support a negligent misrepresentation claim arises from an at-will employment relationship, that case merely stated that it was "by no means certain" that such a duty could exist, *id.* at 862, and in any event predates the Maryland Court of Appeals' definitive holding in *Griesi*.

The Randolph Hills Defendants further assert that the negligent misrepresentation claim fails because the statements were "promissory or predictive" in nature, citing *Miller v. Fairchild Industries, Inc.*, 629 A.2d 1293, 1302 (Md. Ct. Spec. App. 1993). However, in *Griesi*, the court held in a similar context that a statement offering employment could support a negligent misrepresentation claim because the statements may have been false as to the present facts of whether there was a position to be offered, and whether the offeror had actual or apparent authority to extend the employment offer. 756 A.2d at 558. Here, the Randolph Hills Defendants' alleged assertions that Plaintiffs could retain their jobs and benefit arrangements, the equivalent of an offer of continued employment under certain conditions, similarly may have been negligently false as to the present fact whether they had the authority to make such a commitment in light of the impending transfer of ownership.

Finally, the Randolph Hills Defendants also assert that to the extent there was a duty of care, it would be unreasonable for Plaintiffs to rely on oral statements that contradict explicit, written statements in their employee handbook. However, the decision they cite in support of this principle applied it in the context of a motion for summary judgment, rather than a motion to dismiss, and actually explicitly found that the plaintiff had stated a valid claim for purposes of a motion to dismiss. *See Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 455 (D. Md. 2012). Moreover, several of the alleged misrepresentations, particularly those relating to continued employment with the same leave benefits, are not arguably contradicted by the employee handbook. Thus, at this stage of the proceedings, it is premature to conclude that no plausible claim for negligent misrepresentation exists under the allegations in the Complaint.

## IV. MWPCL

Finally, the Randolph Hills Defendants assert that Plaintiffs have failed to state a claim against them under the MWPCL because (1) they were not Plaintiffs' employers as of December 2, 2013; and (2) the employee handbook precludes payment for accrued leave after termination. They also assert that they are not liable to Tungcod on his claim for payment for the weeks he was on paid vacation leave because he has not demonstrated that he was entitled to such leave. Each of these arguments is unpersuasive.

First, Plaintiffs allege that the Randolph Hills Defendants are liable for failing to compensate the plaintiffs who accrued sick and vacation leave as of November 28, 2013, the date when Randolph Road became Plaintiffs' employer. They do not allege that the Randolph Hills Defendants owe them accrued sick and vacation leave after November 28, 2013. Therefore, whether the Randolph Hills Defendants were Plaintiffs' employers as of December 2, 2013 does not preclude recovery.

Second, the Randolph Hills Defendants assert that Plaintiffs' MWPCL claim fails because the Apex employee handbook provides that accrued leave will not be paid upon termination. The MWPCL provides that "each employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. §§ 3-505(a). However, "[a]n employer is not required to pay accrued leave to an employee if the employer notified the employee of the employer's leave benefits in accordance with § 3-504(a)(1) of this subtitle." *Id.* § 3-505(b)(2). Section 3-504(a)(1) states, "An employer shall give to each employee . . . at the time of hiring, notice of . . . leave benefits." *Id.* § 3-504(a)(1).

Plaintiffs allege that this exception does not apply here because they were not provided with the requisite notice of a limitation on payment of accrued leave. *See id.* § 3-504(a)(1). Specifically, they allege that "Randolph Hills and Apex did not adequately notify Plaintiffs of a provision in the Apex Employee Handbook which stated that accrued vacation and sick leave would not be paid upon termination." Compl. ¶ 93. They also allege that "[s]everal Plaintiffs never received the Apex Employee Handbook at all; the contents were not explained to other Plaintiffs in a language in which they are sufficiently conversant." *Id.*

The Randolph Hills Defendants argue that these allegations are insufficient because they do not specify which specific plaintiffs did not receive notice. Here, Plaintiffs have identified two categories of individual plaintiffs who did not receive notice: those who did not receive the handbook and those who did not understand the accrued leave provision because of a language barrier. At this stage of the litigation, viewing these allegations in the light most favorable to Plaintiffs, the Court can draw the reasonable inference that all Plaintiffs fall into one or the other category, such that Plaintiffs have all stated a claim that the Randolph Hills Defendants violated the MWPCL by failing to pay accrued leave because they did not give proper notice at the time of hiring that such benefits would not be paid. *See Iqbal*, 556 U.S. at 678. Whether the Randolph Hills Defendants actually provided Plaintiffs with an employee handbook in a manner that sufficiently placed them on notice that they would not receive accrued leave upon termination is a question that will be resolved as the case proceeds.

Finally, the Randolph Hills Defendants claim that Plaintiffs have failed to state a claim for Tungcod's unpaid wages relating to paid vacation leave he took in November 2013. They assert that (1) the allegations are insufficient under Rule 8(a), in part because there is no specific allegation that Tungcod is entitled to "paid vacation leave"; and (2) the claim against Apex fails

because there is no allegation that Apex was an employer under the MWPCL obligated to pay wages.

The Court rejects the Randolph Hills Defendants hypertechnical arguments. Plaintiffs specifically allege that "Tungcod was never paid for the three weeks of vacation leave that he took, with permission from his supervisor, for which he should have been paid." *Id.* ¶ 76. The allegation that he "should have been paid" for this time is reasonably read to assert that he was entitled to paid vacation leave. In identifying a specific period of time for which Tungcod was promised to be paid, Plaintiffs have made far more specific and plausible allegations than in *Blank v. Giant of Maryland, LLC*, No. MAB 14-CV-01722, 2014 WL 3866017 (D. Md. Aug. 5, 2014), cited by the Randolph Hills Defendants, in which the plaintiff merely stated that he worked "roughly 1,000 hours of overtime" per year for a 10-year period. *Id.* at *5.

As for the claim against Apex, which provided personnel management support to Randolph Hills, Plaintiffs have alleged that Randolph Hills Nursing Care, Randolph Hills Adult Day Care, and Apex were a "joint employer" and constituted an "integrated enterprise," based on the facts that they were all owned and controlled by Jung Hee Lee, that they shared responsibility for managing the Center's employees, and that they jointly managed the employer-employee relationship with the Center's employees. Compl. ¶¶ 104–105. In alleging Apex's joint employer status, Plaintiffs have plausibly alleged that Apex is an employer for purposes of the MWPCL. The Court therefore concludes that the allegations relating to Tungcod's unpaid vacation leave successfully state a claim. The motion to dismiss the MWPCL claims is therefore denied.

## CONCLUSION

For the foregoing reasons, the Randolph Hills Defendants' Motion to Dismiss is DENIED. A separate Order shall issue.

Date: June 23, 2016

THEODORE D. CHUANG
United States District Judge